In re GLAENZER et al.  In re STERN.  In re MARQUAND.

(Circuit Court of Appeals, Second Circuit. May 5, 1893.)

1. CUSTOMS DUTIES — CLASSIFICATION — COLLECTION OF ANTIQUITIES — TARIFF ACT OCT. 1, 1890.

Where a known and acknowledged collection of antiquities was purchased abroad, and sent to this country, the fact that a single vase of such collection chanced to be sent with a separate invoice, and without its companions, does not disturb its character as a "collection of antiquities," admissible free of duty under Tariff Act Oct. 1, 1890, par. 524, (26 Stat. 604, c. 1244.)

2. SAME.

Four tapestries, of different sizes, each belonging to a period prior to 1700, and purchased for the purpose of being added to a collection of curiosities and bric-a-brac, constitute a "collection of antiquities," within Tariff Act Oct. 1, 1890, par. 524.

3. SAME.

A single bronze statuette, imported for the purpose of being added to, and becoming a part of, a pre-existing collection, is not a "collection of antiquities," within Tariff Act Oct. 1, 1890, par. 524, but is dutiable at 15 per cent. ad valorem, as statuary wrought by hand, under paragraph 465.

Appeals from the Circuit Court of the United States for the Southern District of New York.

Thomas Greenwood, Asst. U. S. Atty., for collector.
Edwin B. Smith, for appellee G. A. Glaenzer & Co.
W. Wickham Smith, for appellant Louis Stern.
Frederic H. Betts, for appellant Henry G. Marquand.

Before SHIPMAN, Circuit Judge, and TOWNSEND, District Judge.

SHIPMAN, Circuit Judge. These three appeals involve the question of the construction of paragraph 524 in the free list of the tariff act of October 1, 1890, which is as follows:

"Cabinets of old coins and medals, and other collections of antiquities. But the term 'antiquities,' as used in this act, shall include only such articles as are suitable for souvenirs or cabinet collections, and which shall have been produced at any period prior to the year seventeen hundred."

The facts in each of the cases are as follows:

In May, 1890, Mr. Glaenzer, as agent of Mr. George A. Baker, who has a collection of antique Chinese porcelain in his house in New York city, purchased in Paris, among other things, an entire collection of Chinese curios, which were to be shipped to this country for Mr. Baker, and to be added to the articles which he already possessed. The vendor shipped a portion of the collection at one time, and a portion at another; and for some reason, which did not appear, the article hereinafter mentioned happened to come by itself in November, 1890. It was one of the collection which had been purchased from the same owner, and is a Jade Chinese vase, about 12 inches high, of the invoiced value of 2,000 francs, the product of a period prior to 1700, and suitable for a cabinet collection. The vase became a part of Mr. Baker's collection. The collector assessed upon it a duty of 45 per cent., as a manufacture of metal not otherwise provided for, under paragraph 215 of the tariff act of October 1, 1890. The importer protested that the article was upon the free list, by virtue of paragraph 524. The board of general appraisers reversed the action of the collector, and their decision was sustained by the circuit court. From the latter judgment the United States appealed to this court.

In May, 1890, Louis Stern, of New York, was traveling in Europe, and, among other things, bought two small tapestries, each about 2 feet in width by 5 feet in length, and two large tapestries, of 12 by 21 feet, each of which belonged to a period prior to 1700. They were bought for the purpose of adding them to a collection of curiosities and bric-a-brac, which he owned, and had in his house in New York. A part of this general collection consisted of antiquities. The articles were miniatures, watches, enamels, and bric-a-brac of all sorts. The two small tapestries were shipped by themselves to this country, and were entered April 27, 1891. The collector assessed them for duty under paragraph 392, as manufactures of wool. The importer protested upon the ground that they were free from duty, under paragraph 524. The board of general appraisers sustained the action of the collector, and the circuit court upon appeal, affirmed the decision of the board of appraisers. 49 Fed. Rep. 730. From the latter judgment the importer has appealed to this court. The two large tapestries were shipped in a different vessel, with other articles belonging to Mr. Stern; were entered in the customhouse by his firm April 28, 1891; and form the subject of another appeal, not now before the court.

On October 13, 1890, Mr. Henry G. Marquand, of New York, imported a bronze statuette of Eros, 10 or 12 inches high, valued at £220 and nearly 2,000 years old. It is suitable for a souvenir or cabinet collection. This antique was bought by Mr. Marquand for his own use, for the purpose of being added to, and it has been added to, a collection of antique bronzes which he has been gathering for years, and now has in his house in New York, designed, among other objects, to advance the knowledge of art and its history, and for the benefit of, and to be enjoyed by, scientists, and those interested in art. The collection of bronzes forms a part

of a large collection of antiquities. The collector assessed the statuette for duty under the provision of paragraph 215 as a manufacture of metal. The importer protested upon the ground that it was free of duty, or, if not free, it was dutiable at 15 per centum ad valorem, as statuary, under paragraph 465 of the tariff act of 1890. The board of general appraisers reversed the action of the collector, and upon appeal the circuit court reversed the decision of the board, and adjudged that the article was dutiable at the rate of 15 per cent. ad valorem, as statuary wrought by hand from metal, and the professional production of a sculptor, under the provision contained in paragraph 465. From this judgment Mr. Marquand appealed to this court.

The facts in the Glaenzer Case demand but little comment. The Glaenzer vase was bought as one of an acknowledged collection, to be sent to this country with the rest of the articles so purchased. For some reason it was actually sent by itself. The mere fact that through forgetfulness, accident, or perhaps for supposed safety, a single member of a known and acknowledged collection of antiquities chances to be sent to this country with a separate invoice, and without its companions, does not destroy the character which it would have had if it had been included in the same invoice with the rest of the article.

The vital facts in the Stern Case do not seem to us to differ in kind from those which control the Glaenzer Case, although they do differ in degree. Stern bought four tapestries, each of which possesses the statutory requisites which constituted the group a collection of antiquities. The fact that these tapestries differed from each other in size is not controlling. The statute which speaks of articles as suitable for cabinet collections does not imply that they must be kept in the drawers of a chest, or in the shelves of a case. A cabinet may be a room set apart and devoted to the preservation of articles of antiquity. Cent. Dict. Each was useless to the purchaser as household furniture in his New York house, and neither was bought or used for that purpose, but each was bought to be added to the purchaser's New York collection of curiosities. Two of them reached this country on April 27, 1891, and the others on the next day. Under the uncontroverted finding of the board of general appraisers and under the testimony of Mr. Stern, we cannot say that these four tapestries, useless for anything but as a collection of antiquities, did not constitute a collection. If Mr. Stern, instead of buying tapestries, had purchased four bronzes, each 2,000 years old, at an expense of $4,000 or $5,000, it would hardly be denied that they constituted a collection.

No question can be made that Mr. Marquand's antique bronzes constitute a "collection of antiquities," within the most rigid meaning of the term. It is most attractive to students and scholars, and has an especial educational value, because it illustrates the history of art. The sole question is whether a single article imported for the purpose of being added to, and becoming a part of, a pre-existing collection, is within the terms of paragraph 524. The circuit court answered this question in the negative, upon the ground that the

paragraph related to cabinets of coins and medals, and other collections of antiquities, and not to an importation of a single coin or medal, or other article of antiquity. It is said that this construction makes the paragraph entirely inapplicable to collections of the class which Mr. Marquand is making. Articles of that class must be obtained singly,—one by one,—and cannot be bought in lots. And it is furthermore said that a single article, when imported, becomes, by accretion, part of an existing collection, and therefore falls within the terms of the paragraph. We would willingly yield assent to this reasoning if the paragraph did not indicate the manifest intent of congress that the importation, in order to be duty free, should in fact consist of a collection. It could hardly be contended that an importation of one medal, although designed to become part of a pre-existing cabinet, was, unless in the exceptional circumstances of the Glaenzer Case, an importation of a cabinet. The use of the term, "cabinets of coins or medals," necessarily presents to the mind the idea of a group or assemblage of specimens; and so, also, the phraseology, "other collections of antiquities," was apparently intended to refer to an importation of a collection or group, and not to the importation of a single article. Paragraph 712 of the free list is in the following words: "Specimens of natural history, botany, and mineralogy, when imported for cabinets, or as objects of science and not for sale." This language shows very clearly that single specimens of the named classes, when imported for cabinets, and not for sale, are not dutiable, and also shows that the legislature recognized the distinction between "collections," and single specimens imported for an existing collection. The absence of this language, or something akin to it, in the clause relating to antiquities, when it was used elsewhere in the free list, is somewhat significant. The judgments of the circuit court in Re Glaenzer and in Re Marquand are affirmed, and the judgment of the circuit court in Re Stern is reversed.